We'll move to our last case which is Barragan-Ojeda v. Lynch. Mr. Kishiz? Good afternoon, Your Honor. Your Honors. May it please the Court, my name is Carlos Kishiz. I'm here on behalf of Petitioner Juan Carlos Barragan-Ojeda. Petitioner raises four primary issues for review today. First, Petitioner's due process was violated by having the immigration judge act in the role of the government attorney during his asylum hearing. Second, Petitioner's due process was violated by not having a closed asylum hearing which is afforded to him and available under 8 CFR 1240.11c3i. Third, Petitioner's right to privacy in regards to sexual orientation and the process of coming out was violated by not having a closed hearing and having his family present at the asylum hearing. And fourth, Petitioner admitting that he is gay in his VAA appeal was improperly regarded by the government as a new fact which would trigger a review under a motion to reopen when it should have been treated merely as clearing up a fact of an already applied application. To start off with the due process violation in how the immigration judge conducted the trial, of course it's already been stated that there is due process available to aliens. The Supreme Court has said this under Cepedez v. Davis. It's further gone on to say that in Reno v. Flores that the Fifth Amendment entitles aliens to due process in deportation proceedings. This very own court, Your Honor, in 2005 has noted that it's improper in a due process violation for the immigration judge to act in the role, as the role of the government attorney. It is also improper for a determination to be made under brief questioning. In the record in the case, you can see the government attorney didn't even ask one question, nor the government attorney was even prepared that morning for court. When judge asked him regarding country conditions to rebut evidence that was given by Mr. Barragan, who may I add was pro se, he didn't even have that information readily available. So if the government wasn't even going to prosecute, they were leaving everything to the judge to do this, which is improper. Other circuits have agreed with this. The Third Circuit in 2011 in Aboloshaville v. Attorney General of the United States also noted that it is a due process violation for the immigration judge to step in the role of the government attorney. Also, in regards to the brief interrogation, Your Honor, the government in their response to my brief pointed out that he was given ample time to give a full argument, Mr. Barragan was. I don't think that three questions regarding his homosexuality amounts to sufficient information in order to make a decision in termination, which the judge immediately stopped after questioning whether he was a homosexual. Second, Your Honor, 8 CFR 1240.11C3I does state that an asylum hearing is open to the public unless the applicant requests otherwise. Your Honor, due to him being pro se, the fact that this was such a sensitive subject, one, the petitioner didn't know what to ask. Two, he should have been afforded that right to know that he had a right to have a closed hearing. He feared telling his family regarding his homosexuality. That was the reason for part of his persecution from Mexico that he feared, I'm sorry, that he was persecuted due to his effeminate appearance and perception that he was gay. So it's hard for him to articulate that and it would have been difficult for him to disclose that to his family. Which leads me to the next point, which is right to privacy in regards to coming out was violated by not having this closed hearing. He was essentially being forced to be outed by the immigration judge. While I understand that maybe it was needed for him to articulate that a little better, he should not be forced to come out to his family. That is something personal. Other circuits have, such as the Third Circuit, they have said that the matter of one's sexuality is one of the most private matters that you have. And it is less probable for the government to have a legitimate interest in disclosure of such sexuality. And lastly, the fact that he admits that he's gay on appeal, Your Honor, is not a new fact. The government seems to be stuck on the fact that you have to say you're gay in order to qualify as a homosexual in that protected group. That is not the case. This very own circuit, in other cases, has noted that failure to mention persecution based on sexual orientation for fear of government is not fatal to an application. That is in Mope v. Gonzalez in 2007. Further, this circuit has also said that if an applicant is reasonably fierce, the government's authority due to past abuse and its answers are evasive, it is not an indication of lack. But at first he says he's not homosexual, and then he says he is. Which statement is supposed to be believed? Your Honor, he was not allowed to actually develop that even further. Again, those are two questions, and that's why this argument was so brief. Now, when somebody is asked point blank, especially someone that young, are you a homosexual? It's difficult for him to articulate yes when coming out is such a personal thing. It sometimes takes people years to actually come out. That does not mean they're not gay. They've always been gay. You were born gay. That doesn't eliminate the fact. He was trying to allude to the fact that he is gay by showing that his effeminate behavior made him have a perception of being gay. He didn't want to be further ostracized by not only his community but by his family and admit that he's gay. And as an update, since this has all occurred, he has been disowned by his family because he had to admit that he was gay. So all of his fears have actually occurred, unfortunately. This is why I don't agree with the government being stuck in the fact that he has to say he was gay. If you use that as him saying gay just to supplement the rest of the application, then you can see he is in a protected way. Well, not everybody, not every man who is effeminate is homosexual. And as I say, how do we know that when he said he was effeminate but not homosexual, he was lying? Maybe he decided since effeminacy wasn't getting him anywhere, he'd try homosexuality. I understand that, Your Honor, but you can't fault him for not being able to articulate the fact that he's gay. Well, I think you have to decide at the beginning of the hearing what your position is rather than switch from one to another. Well, he was not able to articulate any sort of position. As the record indicates, the immigration judge asked all the questions, and they were pretty much just background questions. There was only a select few questions that went to the heart of even any persecution, which is why it was an improper trial. Again, why didn't the government attorney even step in for anything? They didn't ask any questions. They weren't prepared. They didn't have country conditions. They didn't have anything to rebut any articles that were given by Mr. Barragan. So while I understand that maybe he should have articulated a lot better that he is gay from the beginning, he was never really given an opportunity to do so, which is why there was a due process violation in this case. It is improper for the immigration judge to act the way he acted and for the government attorney to pretty much care less about this case and not even do their due diligence. Justice would have been better served had the government attorney actually taken at least 15 minutes to look at the evidence and look up the country conditions and see not only how young people in Mexico are being treated, but also how maybe someone that's effeminate is being treated. None of that were able to even fully argue, rebut it, or anything, Your Honor, because of what occurred by the immigration judge's actions. Are you going to reserve the rest of your time? I will reserve my rest of my time. Okay. Thank you, Mr. Kucinich. Thank you. Ms. Nardone? Good afternoon, Your Honors. Nicole Nardone, attorney for the respondent of the United States. Could you speak up, please? Yes. As an initial matter, the court should find that the board did not abuse its broad discretion in construing the petitioner's appeal as a motion to reopen or motion to remand. Before the immigration judge, the petitioner testified that he had experienced some discrimination in employment in Mexico due to his effeminate appearance, and he specifically denied when asked and denied that he identified as a homosexual. On appeal, however, petitioner's counsel told a very different story and alleged without any evidentiary support and not a statement from the petitioner that the reason that the petitioner did not divulge certain facts, specifically that he was indeed a homosexual and that he had been sexually assaulted in Mexico, was on account of his being afraid of speaking up during the hearing. In construing the appeal as a motion to reopen, the board here relied on its holding in matter of MAF that an asylum application will be considered new if it either presents previously unraised basis for relief or it presents the same protected ground but is based upon a substantially different basis. Tell me, did the immigration judge have a duty to consider the possibility that Mr. Barragan might be perceived as gay and suffer persecution on that basis even when he denied that he was in fact gay? You know, that's the sort of persecution that's alleged in the case we just heard. Yes, Your Honor. Several courts have found that, particularly in a case where a petitioner is unrepresented in his pro se, an immigration judge does have an obligation to develop the record, and the record shows here that the immigration judge did perform as effectively as he could and did give the petitioner a full opportunity to meaningfully present his case. The immigration judge here asked very open questions, responded to those questions, and if you look at the transcript, it shows that the immigration judge first went through the allegations the petitioner had made in his asylum claim that his family had been tormented by gangs, and then allowed the petitioner to present a statement from his father that indicated again that the family was being extorted by gangs. The immigration judge also followed up on a possible PSG that the petitioner may have had with regard to some of his activities. A PSG? I'm sorry, a particular social group. Oh, I'm sorry. Sorry about that. The immigration judge did follow up on a couple of different claims that he made in his asylum claim, but then he also, toward the end of the hearing, this is when the petitioner for the first time raises the issue that he is experiencing discrimination based on his effeminate appearance. The immigration judge says, do you want to tell me anything else? This is at the very end of the hearing. Do you want to tell me anything else concerning your fear of going back to Mexico? And the petitioner responds, well, there are just many things. And then the immigration judge says, well, is there any other reason that you fear going back that you have not told me? I mean, he's casting a very wide net. Are you reading from the transcript? Yeah, I'm reading from the transcript here. Okay, yeah. And so at which point the petitioner says, well, what about discrimination based on the way you look? And the immigration judge says, yes, well, what difficulties have you had? At which point the petitioner talks about, well, I was discriminated against in hiring, and he talks about how a potential employer had referenced that they would rather hire someone that can do the work of a boy rather than a girl. And so, you know, this is after the immigration judge has already gone through his asylum claim. He raises this. The immigration judge clearly fulfills his duty of asking very broad questions, and this is the only claim that the petitioner brings up, which is that he faced some discrimination in hiring. At which point, you know, the immigration judge is not expected to be a mind reader, cannot know what else he may have been holding back. And importantly here, the petitioner's counsel, although petitioner's counsel has argued on appeal that petitioner had been afraid to reveal these facts about his sexual assault and his mistreatment in Mexico on account of being gay because his family was in the courtroom and he was afraid and wasn't ready to come out. The petitioner himself never submitted any statement to that effect. These are all just statements of counsel. And for that reason, the board reasonably found and gave them no weight because they simply were not supported by any evidentiary facts. The court should also find the board did not abuse discretion in finding that the petitioner failed to meet the heavy burden of proof for reopening or remanding the proceedings based on this new information. As I said, the board gave, reasonably gave no weight to the unsupported claims of petitioner's counsel. The petitioner did not reveal facts related to his sexual identity and sexual assault because his family was in the courtroom. There are no facts the petitioner points to that the family was in the courtroom, that the petitioner ever asked for a sidebar with the immigration judge, that there was any type of discussion had or that the immigration judge had any idea that the petitioner was wanting to, you know, privately tell him something. Wait a minute. Are you saying that we don't know if the family was in the courtroom? Is that what you're saying? The record does not show that the family was in the courtroom. The petitioner never makes a reference to his family being in the courtroom. There's no facts. There's no evidence there in the record to show that. And importantly, again, although the petitioner's counsel submitted a statement from the petitioner regarding events that happened in Mexico, the petitioner never said anything. There are no facts at all that the petitioner himself did not discuss these facts related to his sexual assault and facts related to his homosexuality because he was either, A, afraid to, B, because his family was in the courtroom, or C, because he wasn't ready to come out. None of those facts. What was C? I'm sorry. C, that he was not ready to come out as a homosexual. So he never, the petitioner himself never said any of these things. Only his attorney has. So we just don't have, the board just simply doesn't have those facts before them to make that decision. And a motion to reopen is a very high bar that the petitioner needs to meet. And most importantly, it needs to be supported by facts or evidentiary evidence. And that evidence was not here. The board also recently found unconvincing petitioner's more objective claims that, petitioner's counsel's more objective claims that the petitioner did not discuss these facts because of his youth or his lack of representation. As the board observed, the petitioner was over 18 at the time of his removal proceedings, and he was 20 years old. The record shows the time of his hearing. The record also supports the board's finding that he had ample time to obtain counsel. He had over a year and a half. His case had been postponed several times by the immigration judge specifically to allow him to obtain counsel for representation. And he never did so. As this court has found, a motion to reopen should not be granted unless the acts or the evidence presented could not by the exercise of due diligence have been discovered earlier. And here petitioner is saying, you know, he wasn't ready to come out. He was uncomfortable. Could you speak a little less fast? Slower. I know. And he would have liked to have had a closed hearing had he had counsel, which he had been urged to obtain several times. Perhaps a counsel could have obtained him a closed hearing where he would have been more comfortable to discuss his homosexuality and the incidents that occurred in Mexico. Petitioner has also not established that he was denied a full and fair hearing or that there was a due process violation here. The record shows that he was provided a meaningful opportunity to present his case. As an initial matter, petitioner never raised these arguments before the board. So the board never had an opportunity to correct the procedural deficiencies that may have occurred during the hearing. Even if the court finds that it has jurisdiction, it should find that the petitioner has failed to make it a due process claim based on the assertion that he had requested a closed hearing. Again, because petitioner's counsel never submitted a statement from the petitioner that he had asked for a closed hearing. And also, petitioner never submitted a statement saying that had he had a closed hearing, he would have discussed his homosexuality or the incidents that occurred in Mexico. Therefore, he cannot establish prejudice on that basis. Likewise, petitioner has not made out a due process claim based on his assertion that he was not given a full and fair hearing by the immigration judge. The record shows that the immigration judge fully developed the record. He asked open-ended questions and allowed the petitioner an opportunity to fully testify and ask relevant follow-up questions. No evidence supports the petitioner's claim that he was not given an opportunity to go into detail regarding his effeminate personality. And as I just discussed, the record shows that he was asked very specifically what problems he's had in that regard. Even if the petitioner could establish, however, that somehow the immigration judge fell short in not pushing him on the issue with regard to his homosexuality. Again, petitioner never submitted a statement, so the court cannot find there was prejudice. Indeed, petitioner's counsel indicates that the reason petitioner did not come forward with this homosexuality bill is because he wasn't ready to discuss it. So the petitioner cannot say that if he was pushed on this issue, he would have actually revealed his homosexuality at that time. Based on the foregoing, the court should find that the board probably found petitioner did not meet the high burden for establishing that he should be granted a motion to reopen to and that his case should be remanded for re-hearing before the immigration judge. Okay. Thank you, Ms. Nardone. Thank you. Mr. Kishas? Your Honor, the government just read the transcript. It took less than two minutes to read the full transcript. An asylum hearing typically is allotted three to four hours for an immigration hearing. If it was finished in less than pretty much five minutes, that is not a full hearing where anybody was able to develop any sort of argument. You can't say that this was not a brief hearing. It was very brief. She read the four questions that were asked, and then a decision was made. Also, in regards to a statement from the petitioner, petitioner did in the appeal to the BAA state that he hadn't told anybody that he was gay yet at the time. So he did note that he had a fear of telling people. Again, whether he was able to articulate that he was gay better, he should not be faulted for. Also, a lot of these issues raised are constitutional issues of due process, which they're only proper to be brought on in this court. They're not proper to be brought in front of the BAA. The BAA would not hear any constitutional issues. However, all of these issues were brought up and mentioned in the BAA appeal. Again, Your Honor, it has to be stated that he cannot be faulted for not saying that he's gay, and the fact that he admits that he's gay is not a new fact. Just like if somebody was later on to report a rape, that they were raped, you can't hold that against them in an immigration setting. If a person doesn't report the rape until after the asylum hearing, that is not considered a new fact, but it's considered a fact to, again, to clear up the previously filed application, which is why it was improper for the BAA to regard this as a motion to reopen. This is not a motion to reopen. All the facts were the same, and from what the government is saying, even if affidavits and all that were submitted. Wait. It's not a motion to reopen? It's not. What is it? It should just be a motion to remand because all the facts were not – we're just using facts to clarify the application that was already filed. We are not applying facts that bring up a new application. So that's why it wouldn't be a motion to reopen as the government states. Is that it? That's it. Okay. Well, thank you very much, Mr. Quiches and Ms. Nardone, and the court will be in recess.